# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHERMAINE LASTER,

        Petitioner,

    v.

WARDEN WERTZMAN, *et al.*,

        Respondents.

No. 4:23-CV-00117

(Chief Judge Brann)

## MEMORANDUM OPINION

### MARCH 21, 2023

Petitioner Shermaine Laster, who is confined at the Federal Correctional Institution, Allenwood (FCI Allenwood) in White Deer, Pennsylvania, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  In his petition, he challenges the determination allegedly made by the Federal Bureau of Prisons (BOP) that he is not eligible for application of time credits earned under the First Step Act of 2018 (FSA).[1]  Because Laster has failed to exhaust his administrative remedies, the Court must dismiss his Section 2241 petition.

## I.   BACKGROUND

Laster is currently serving a 40-month sentence imposed by the United States District Court for the Northern District of Texas for possession of a firearm

---

[1]   Pub. L. 115-391, 132 Stat. 5194 (2018).

by a convicted felon.[2]  His projected release date, via good conduct time, is April

27, 2024.[3]

It is undisputed that Laster has been deemed eligible to earn FSA time

credits.[4]  Laster argues, however, that his earned FSA credits should be applied to

his sentence to create an earlier release date.[5]  He maintains that the BOP is

following its own internal policies rather than the FSA itself, and that his credits

must be applied under the statute's plain language.  Laster's petition is fully

briefed and ripe for disposition.

## II.   DISCUSSION

Although not mentioned by Respondent, the Court must determine whether

Laster exhausted available administrative remedies.  If Laster failed to exhaust his

administrative remedies, the Court must dismiss his petition because it is barred

from reviewing his claim on the merits.[6]

### A.   Administrative Exhaustion

Although there is no explicit statutory exhaustion requirement for Section

2241 habeas petitions, the United States Court of Appeals for the Third Circuit has

---

2    *See* Doc. 8-2 at 2 ¶ 3; *id.* at 6.
3    Doc. 8-2 at 2 ¶ 3; *id.* at 6.
4    *See* Doc. 8-2 at 3 ¶ 7.
5    *See generally* Doc. 1.
6    *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 762 (3d Cir. 1996); *Ryan v. United States*,
     415 F. App'x 345, 347 (3d Cir. 2011) (nonprecedential) ("As [Petitioner] readily acknowledges
     that he failed to exhaust available administrative grievance processes, the District Court was
     correct to dismiss his petition." (citing *Moscato*, 98 F.3d at 760)); *see also Ray v. Kertes*, 285
     F.3d 287, 293 n.5 (3d Cir. 2002) (noting district courts' "inherent power to dismiss sua sponte
     a complaint which facially violates a bar to suit").

consistently held that exhaustion applies to such claims.[7]  Exhaustion allows the relevant agency to develop a factual record and apply its expertise, conserves judicial resources, and provides agencies the opportunity to "correct their own errors" thereby fostering "administrative autonomy."[8]

The BOP has a specific internal system through which federal prisoners can request review of any aspect of their imprisonment.[9]  That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel.[10]

Exhaustion is the rule in most cases, and failure to exhaust will generally preclude federal habeas review.[11]  Only in rare circumstances is exhaustion of administrative remedies not required.  For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction.[12]  Exhaustion is likewise excused when it would be futile.[13]

Laster concedes that he has not exhausted his administrative remedies and

---

[7]  *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) (citing *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)).

[8]  *Moscato*, 98 F.3d at 761-62 (citations omitted)

[9]  *See generally* 28 C.F.R. §§ 542.10-.19.

[10]  *See id.* §§ 542.13-.15.

[11]  *See Moscato*, 98 F.3d at 761.

[12]  *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)).

[13]  *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see Cottillion v. United Refining Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (affirming, in ERISA context, futility exception to exhaustion requirement).

argues that exhaustion would be "futile."[14]  He claims that he attempted informal

resolution and filed multiple "BP-8's" but has not received a response.[15]  He also

asserts that prison officials (like his Unit Manager and Case Manager) are avoiding

him because he continually raises his FSA credit issues to them.[16]  Laster,

however, has not alleged that he has filed a formal administrative remedy with the

Warden, let alone appealed to the Regional Director or to final review with the

General Counsel.

     Laster also has not demonstrated that exhaustion would be futile.  Indeed, it

is possible that an appeal to the Regional Director or to General Counsel may

result in the relief he seeks, or at the very least create a developed record for

federal habeas review.  Laster's mere allegation that he has been told the decision

is "final,"[17] without pursuing formal review by the Warden or appeal to higher

BOP authorities, is insufficient to circumvent the general exhaustion requirements

for Section 2241 petitions.  Moreover, because Laster has failed to exhaust his

administrative remedies, it is impossible for the Court to determine whether Laster

meets the other requirements for *application* of—rather than *earning*—FSA credits

(which requirements are further detailed below),[18] or what the BOP's official

---

[14]  *See* Doc. 1 at 6-8.
[15]  *See id.* at 6.
[16]  *Id.* 6-7.
[17]  *See id.*
[18]  *See infra* Section II(B) (citing 18 U.S.C. § 3624(g)(1)(A)-(D)).

position is regarding his specific FSA claim.[19]  Consequently, the Court must

dismiss Laster's Section 2241 petition for failure to exhaust administrative

remedies.[20]

### B.    Application of FSA Earned Time Credits

Respondent argues that Laster is not eligible for application of FSA time

credits because he has had only one risk reassessment where he was found to be a

"Low" or "Minimum" recidivism risk score.[21]  Although the Court makes no

determination on the merits of Laster's petition, it does observe the following.

If FSA time credits are properly earned by an eligible inmate, application of

those time credits to a prisoner's sentence is governed by 18 U.S.C. § 3624(g).

Among other requirements, to be eligible for application of earned time credits, a

prisoner must (1) have earned time credits "in an amount that is equal to the

remainder of the prisoner's imposed term of imprisonment"; (2) demonstrate

through periodic risk assessments a "recidivism risk reduction" or maintain a

---

[19]   *See Donnelly v. Fed. Bureau of Prisons*, No. 10-cv-3105, 2012 WL 2357511, at *4-5 (D. Minn. May 30, 2012) (noting that one of the primary purposes of exhaustion is to develop the relevant factual and legal issues, as "[t]he administrative remedies process hones the factual record, and brings clarity to the legal issues presented in the case," and concluding that the purported challenge to a BOP policy "should have been fine-tuned and vetted before being brought into federal court"), *report & recommendation adopted*, 2012 WL 2357490 (D. Minn. June 20, 2012).

[20]   *See Moscato*, 98 F.3d at 761.

[21]   *See* Doc. 8 at 8; Doc. 8-2 at 3 ¶¶ 7-8 (noting that Laster was found eligible for FSA Time Credits on September 26, 2022; is currently assessed as a low recidivism risk; that his next risk reassessment is scheduled for March 25, 2023; and that his FSA credits will be applied "once Laster has again achieved a low or minimum PATTERN risk at his next assessment on March 25, 2023" (citing 28 C.F.R. § 523.44(c)).

"minimum or low recidivism risk" during the term of imprisonment; (3) have had

the remainder of his term of imprisonment computed; and (4) as pertains to

prerelease custody, have been determined under "the System" to be a minimum or

low risk to recidivate pursuant to the last two reassessments of the prisoner or have

had a petition to be transferred to prerelease custody approved by the warden of the

prison; or, as to placement in supervised release, "been determined under the

System to be a minimum or low risk to recidivate pursuant to the last reassessment

of the prisoner."[22]

Both the relevant statute and regulation demonstrate that Respondent's

argument is only partially correct.  Early transfer to prerelease custody through

application of FSA time credits requires two consecutive low or minimum

recidivism risk reassessments.[23]  But early transfer to supervised release does not.

Early placement in supervised release requires, among other things, that the inmate

"has been determined under the System to be a minimum or low risk to recidivate

*pursuant to the last reassessment of the prisoner*."[24]


Therefore, although the Court makes no determination on the merits of

Laster's petition, it must be noted that Laster could potentially qualify for

application of earned FSA time credits even though he only has one reassessment

---

[22]   *See* 18 U.S.C. § 3624(g)(1); *see also* 28 C.F.R. § 523.44(b)-(d).
[23]   *See* 18 U.S.C. § 3624(g)(1)(D)(i)(I); 28 C.F.R. § 523.44(c)(1).
[24]   18 U.S.C. § 3624(g)(1)(D)(ii) (emphasis supplied).

at a "low" risk level (so long as he meets the other requirements for early placement on supervised release).[25] This is true even though Section 3624(g)(1)(B) requires a prisoner to "ha[ve] shown through the periodic risk reassessments a demonstrated recidivism risk reduction *or* ha[ve] maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment."[26]

The Court emphasizes that this statutory eligibility requirement is phrased in the disjunctive. Consequently, because it appears that Laster entered FCI Allenwood as a "low" risk per his initial assessment and classification on September 26, 2022,[27] even though he only had one recidivism risk reassessment on October 21, 2022 (wherein he was again determined to be a "low" recidivism risk),[28] he may qualify for application of FSA credits for early placement on supervised release provided that he meets the other statutory requirements. Such early placement on supervised release does *not* explicitly require two reassessments at a minimum or low risk[29]; moreover, Laster may potentially satisfy the second condition in Section 3624(g)(1)(B) of "*maintain[ing]* a minimum or low recidivism risk . . . during [his] term of imprisonment"[30] if he entered BOP

---

[25] *See* 18 U.S.C. § 3624(g)(1)(A), (B), (C), (D)(ii); *id.* § 3624(g)(3).

[26] 18 U.S.C. § 3624(g)(1)(B) (emphasis supplied).

[27] *See* Doc. 1 at 5; Doc. 8-2 at 3 ¶ 7; *id.* at 11; Doc. 9-4. Laster claims that when he entered BOP custody on September 26, 2022, he received a "15 point score for general and 14 point score for violent, which puts [his] recidivism [risk] at low." Doc. 1 at 5. Respondent does not dispute this assertion.

[28] *See* Doc. 1-8.

[29] *See* 18 U.S.C. § 3624(g)(1)(D)(ii).

[30] *Id.* § 3624(g)(1)(B) (emphasis supplied).

custody as a "low" risk and was later reassessed as a "low" risk, thereby "maintaining" a low recidivism risk.

Nevertheless, because Laster failed to exhaust his administrative remedies, and because the record before the Court presents substantial factual impediments to granting habeas relief,[31] Laster's Section 2241 petition must be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Court must dismiss Laster's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[31]   The Court specifically observes that, as of January 19, 2023, Laster had only earned 30 days of FSA time credits.  *See* Doc. 8-2 at 11.  Laster's release date, via good conduct time, is not until April 27, 2024.  *Id.* at 7.  It appears, therefore, that Laster does not qualify for application of FSA credits at this time because he has not "earned time credits . . . in an amount that is equal to the remainder of the [his] imposed term of imprisonment."  18 U.S.C. § 3624(g)(1)(A).  The Court, therefore, could not order the BOP to immediately apply Laster's FSA time credits.  *See, e.g.*, *Mills v. Starr*, No. 21-cv-1335, 2022 WL 4084178, at *4 (D. Minn. Aug. 17, 2022) (noting that the FSA "provides that a prisoner is eligible to have earned time credits applied for supervised release or prerelease custody only when she has earned time credits that equal the remainder of her sentence") (collecting cases).  As the court in *Mills v. Starr* explained, there is always the chance that a prisoner may lose time credits for future program-related disciplinary infractions or that his recidivism risk score may increase during his incarceration.  *See id.*, at *4 n.5 (citing, *inter alia*, 18 U.S.C. § 3632(e); 28 C.F.R. §§ 523.43, 541.3).